This is an video amplified and translated via听译师 HelperBuddy app. Hope you enjoy this video. Hope you enjoy this video. Those aren't beans. Next case is Core Brace vs. Star Seismic, 2008-15-02. Mr. Roberts. Good morning. We go from yellow beans to steel braces. This case presents the interesting and unique issue of whether have-made rights have been transferred in a patent license agreement. In this case, the district court, in ruling that they were not transferred, failed to consider the express language of the agreement and to follow this court's clear guidance in prior Federal Circuit cases. What's the express language? The express language from the agreement is the Reservation of Rights Clause, which says rights not expressly granted to the licensee under this agreement are reserved by the licensor. Then the question is whether the grant of authority to make includes the right basically to subcontract. Is that right? Yeah. This agreement provides the right to make, use, and sell, as a lot of patent licenses do. But then it went the next step and said in the Reservation of Rights Clause that we're going to reserve back to the licensor any rights not expressly granted. You're right. Then the question is, if we construe make as have-made, then the Reservation Clause doesn't help you. And this court has already addressed that in the Intel ITC decision, where the court looked at language almost identical to this, where there was a non-exclusive license, no right to sub-license, it had make, use, and sell. That was a special effects case, wasn't it? Licensing dealing with Sanyo products, products labeled as Sanyo products. That's a different situation. That case was a different situation, but it did call for the court to analyze the disposition of have-made rights in that case. In the context of that case. In the context of that case. We've heard, including that Atmel was the one that was making it and not Sanyo, which is entirely different than what we've got going on here, is it not? Well, of course, the case arose in a different context, but the language and the disposition of have-made rights was exactly the same. It was a non-exclusive license.  The language in the agreement where the administrative law judge, what happened was Atmel was pointing to the Sanyo limitations saying, well, that restricts have-made rights. And the court says, no, that's not the typical way you would do it. And then the court went on and said, here's the disposition of have-made rights. Because of the reservation of rights clause, which says rights not expressly granted, the reservation of rights clause keeps the have-made rights with the licensor. And the reservation of rights clause in that case is virtually word for word identical to the one we have in this case. So it's a simple fact of applying the language of the agreement. The case comes to us on a dismissal for failure to state a claim on which relief could be granted. So in determining whether you've stated a claim, we have to look to the complaint, right? That's correct. And what the complaint seems to me to say in two different paragraphs is that what was done here was not proper because it constituted a sub-license. And how is this a sub-license? It seems to me, I don't understand the theory that you say this is a sub-license. Because you're not authorizing anyone to make a product on their own for them to do as they please with it. You're asking them to make the product for you. Our contention... Your position is that this sub-contracting constituted a sub-license? Our contention in the complaint is that when Star Seismic engaged third-party manufacturers, that that was a violation of the express provision in the complaint that said there are no sub-licenses allowed. Star Seismic then came back by defense and says, well, we're not operating under a sub-license. We're operating under the have-made rights that we got in the contract to which we responded. You don't have have-made rights because those have-made rights were reserved to the licensor through the reservation of rights clause. We have to construe the whole agreement. When you look at 6.1c, states with respect to improvements that the licensee shall own whole title to any rights associated with any improvement by licensee or a third party whose services have been contracted by licensee. Isn't that a pretty clear implication that there can be a third party who's contracted by the licensee? Well, as we pointed out in the brief, there could be various third parties contracted by the licensee, but not necessarily third-party manufacturers. There appear to be some brownie points to be scored here by quoting your language back to you. And if I may do that, what we have here is... It's my language. It's language from the agreement. Well, let me quote from language from you is that you can't give effect to expressions of intention if doing so would override clear operative language in the agreement. That's from the Cyrex v. Intel case. It's clear, isn't it, that the agreement did not explicitly address the question of this making for you. That much is clear. Everyone agrees on that, including the district court. And so then the question is, applying the Reservation of Rights Clause, it says, rights not expressly granted, we agree these were not expressly granted, are reserved to the licensor. The district court, of course, looked at some of these other provisions, such as the examination and audits, the record keeping, and found an inference that supported some intent that had made rights were transferred. I thought what the district court held in effect, basically, is that in light of all of these provisions, the word in the agreement, make, includes the right to have someone else make it for you as long as you're selling it as your product. And the issue we take with that is that have made rights have always been an implied right. The cases talk about this being implied right. Even the commentator said, ordinarily, have made rights accompany the right to make. But we see in the case law, in the Intel case, we see in certainly the language here, that it's possible to separate those out. And in a lot of license agreements where those are important, they will say, we license the grant to make, have made, use, sell, offer to sell, et cetera. I don't understand why the patentee would have intended such a limitation, because I assume that even though a third party is manufacturing this product, since Star is the one that will be selling it, Star will have to pay a royalty on every one of these devices that it sells. So what is the, why, the licensor is no worse off, it seems to me, if the product is manufactured by a third party than if it's manufactured by the licensee. In either situation, the licensor gets whatever royalty it's entitled to on the manufacturer of the product. Well, in this case, since the case was dismissed on a motion to dismiss, and we haven't even gotten to discovery, we don't have the benefit of any intent or expressions of intent by the original patentee. What we do have, however, is the express language of the contract. And now since then, Corbrace has purchased that contract, and in doing so, relied upon... I take it from your complaint that you allege that someone else manufactured the device? That's correct. Suppose instead of someone else manufacturing the device, someone else had manufactured merely one component of the device. Would your answer be the same, or do you think it would be different? Well, I think then we get into some interesting issues of contributory or induced infringement, and whether those are substantial non-infringing uses. I suppose that even their third party manufacturers used some other manufacturer to manufacture the nuts and bolts and things that went into this. So I guess my answer would be different. But where you've got an allegation and complaint of third party manufacturing, that has not been disputed. And you've got express language in the license agreement that says these rights are withheld, and we bought the license and the patent, looking at the license agreement, saying we should be able to rely on what's written here and not have to look behind that at some expressed intent of a licensor. It really turns out what is meant by the phrase expressly, isn't it? Yeah. In other words, does expressly mean explicitly? I suppose that's right. And that's your distinction between our case and the Carey case? Or is the distinction that Carey was not an exclusive license? Well, Carey, of course, was an exclusive license, and I don't believe Carey had a reservation of rights clause. So I think Carey was just one of many cases where the right to have made is transferred with the right to make, and there's no question about whether that was reserved or not. And in the ordinary case, I believe that is the situation. You transfer the right to make, use, and sell. You get the right to have made with that. But in this case, where you take the extra step and you say rights not expressly transferred are reserved, then the have made right gets pulled back. Isn't that, even without the language, doesn't that principle govern the way we would construe a contract? If you have a reservation of rights, wouldn't you assume as a matter of law, not as a matter of contract, that anything that you haven't expressly given up, you haven't given up? I don't see where the reservation of rights clause is any different than the way we would construe every contract. Well, the reservation of rights pulls back the have made. Without the reservation of rights clause, I believe the have made rights are implied with the make right. And so if you transfer the make right, you get have made rights. But when you add the reservation of rights clause, it's saying rights not expressly transferred are held back, then the have made right comes back. But if, as you just said, without the reservation of rights clause, this provision would permit the subcontracting, then one would think the way you expressly reserved it was to say that explicitly, that is, they have the right to manufacture. This does not include the right to subcontract. If the language manufacture, make, is broad enough to include subcontracting, then I would think that you need something more than this general reservation of rights in order to make it clear that this is an exception to the general rule. Certainly in careful contract drafting, you might do that. In this case, however, as in Intel ITC, the reservation of rights clause was used to pull back the have made rights clause. I see I'm into my rebuttal time. Thank you. We'll save it for you, Mr. Roberts. Mr. Burton. You may appreciate the court. Your Honor, what we're looking at here is whether the right to use third parties to manufacture was given in this case. Well, it wasn't expressly given. It has to have been given, if at all, by implication, right? Your Honor, I respectfully disagree. Where does the agreement say have made? It doesn't say have made, Your Honor, but the case law is clear that the right to make includes the right to have others make it for you, if it is for your benefit. It is just like, Your Honor, in the Montrose case. In the 19th century, it made the statement that has been adopted since that time in Westinghouse and Cary, adopted by Amger, that this right to make and sell allows you to use third parties to make and sell for you. Your Honor, and so, in this case, when the right was granted to make, that included the right to use third parties, just as is. Unless the reservation carved out an exception to it. Unless it did. But in this case, it did not, because it only said that we reserve rights not granted. The right to use third parties was granted. Now, if we were to use the argument that Corbrace is making, then star signs of it could not use distributors to sell. Now, the case law makes it clear, starting with Montrose, that if... But the problem is, I mean, you refer to the rights granted. I mean, rights not expressly granted. So your answer to that is that the right to subcontract was expressly granted? Yes. And how was it expressly granted? Because, Your Honor, it is part of the right to make. Now, if I could, Your Honor... Expressly? In the sense, Your Honor, that, yes, the right to make... Now, the right to sell, for example, nobody's going to dispute that if you have a right to sell without limitation in a geographic area, you can use third-party distributors. And they are selling the licensed product. Isn't that because you're selling to the distributors? It's because the distributor is... In some cases, Your Honor, you may not be selling to the distributor. The distributor may be your independent third-party representative selling to retail establishments as a representative. And so you're not selling to the distributor in some cases, but the distributor is selling for you. And without an express limitation, such as in Westinghouse... In Westinghouse, there was a limitation on to whom the licensee could sell. That was explicitly stated in that agreement. And here we have no limitation on who's making or who's selling. This is a state law question, isn't it? Excuse me? This is a contract question. It certainly is, Your Honor. It's a state law question. Whose law applies? Utah? Utah law applies, Your Honor, by contract. Is there any law in Utah on this? There is no law in Utah on point, Your Honor. And so there's very few cases on this issue. And I would submit that that is because when you are granted a right to make, use, and sell, you can do so. And how far can we take this? We don't know that. You can say that, and that might make some sense to us, but we can't take that to the bank. We can't state that as a finding. That's a factual conclusion, that we don't have empirical data to support this record. Your Honor, what we do have is very clear case law. It's on point. But the problem I have with the case... I'm sorry. You have very clear case law, but not Utah case law. That is right, Your Honor. And so we... Should we perhaps certify this question to the Supreme Court of Utah? It's an important question, and there seems to be no Utah law on it. Why should we try to figure out what Utah law is when we could perhaps get the Utah Supreme Court to tell us? Your Honor, it is an important question. There is no Utah law. However, I believe that the case law that does exist, including Cary, including Westinghouse, is clear enough to infer that any time a license is granted with the right to make or sell, you can use third parties to do that. Well, the problem I'm having resting comfortably, if not almost entirely, on Cary is that Cary was an exclusive license. And even in Cary, I believe, the licensee had the right to grant non-exclusive sub-licenses. So it seems to me, under those circumstances, how he would construe his right to make is an analysis somewhat different from what comes up in this case. First of all, there's nothing in Cary that says that the right to have made exists because of a right to sub-license. In fact, the opposite conclusion could be inferred when the court distinguishes very clearly between a sub-license, when the third party is making for their own benefit, and the right to have others make. That's a completely different issue. There's no discussion anywhere that the right to have made is tied to the exclusivity. Westinghouse, on the other hand, is a non-exclusive, non-transferable license to manufacture. And that case goes on to recognize that the defendant could have the apparatus manufactured by others. Now, the court asked the question to Mr. Roberts, where does this end? In other words, can a third party make part of the licensed product? How much? Half? We don't understand that because the right is really tied to the benefit of the licensee. What if the licensee uses a temp agency to provide labor, and they have a contract with this third party temp agency? Are they an infringement because they're using a temp agency? Or an employee who's simply not an employee, but he's an independent contractor? Or if some independent third party comes on site? Or if you take it off site and it's under the supervision of the licensee, where does that analysis end? Well, it ends, at least we know from the Intel case, it ends with what Sanyo and Atmel did in that case. And that is a different case because we're talking about a foundry right. In other words, a right of a third party to come in and use the licensee to manufacture and put their name on the product. Are you suggesting that's the only limitation then on the have made? And that circumstance is the only limitation? The only limitation being... On made versus have made? Is that foundry example? Well, Your Honor, I would submit that that case is a completely different fact circumstance. And certainly, a have made right does not grant a foundry right. In other words, a right to make does not grant a right to make for third party's benefit. In this license agreement, what do you think the word expressly means? I think it means rights that aren't stated, Your Honor. In other words, and again, the distinction I'm going to draw, and I'm supported by the law we've cited, is that the right to make necessarily includes the right to have an employee make it, a secretary make it, an independent contractor make it, or a third party manufacturer, so long as it is for the licensee's benefit. That is what the right to make includes. But what about... You're talking about the right to make. I'm trying to find out, what does the word expressly mean? Doesn't it mean basically that it can't be rights by implication? That's right, Your Honor. But a have made right, again, is not implied. But don't some of the cases refer to it as implied? No. It does not, Your Honor. The only case that talks about it being implied is the Intel ITC case. The counsel has referred in their brief to Westinghouse, saying that that's an implied right. Westinghouse doesn't say that at all. It says that the language doesn't imply that the defendant does not have have made rights. In other words, it's assuming in a non-exclusive license that the defendant has the right to have third parties make it. And so if that's the case, it needs to be taken out some way, either by implication, as this court said, or expressly. And so the burden is on the licensor to expressly withhold that right to make. Your Honors, we've got... We're talking about boilerplate language. It is in many licenses that have probably been before this court about make, use, and sell. We also have reservations of rights clauses that are in many, many agreements. A decision that the reservation of rights takes away a have made right is going to throw a lot of licenses into question. Mr. Bretton, you haven't mentioned 6.1c. Is that not part of your case? It certainly is, Your Honor. And we've got, in our brief, we talk about 6.1c. We talk about 7.2. Clearly, the parties... But your opponent says there are other kinds of subcontracting other than subcontracting the making? There might be. But it doesn't say that. And furthermore, if it's somebody who's going to, perhaps, develop technology or improvements on this technology, it's not going to be a sales agent. It's not going to be an accountant. It's going to be somebody that's helping to actually develop the technology, somebody manufacturing. Is this having made a supply contract under 7.2, which relates to examinations and audits? Your Honor, that's another example of language in this agreement that contemplates that there are third parties that might assist in the manufacture. They're going to supply. They're going to provide service. There are service contracts and supply contracts. Licensee shall keep its records relating to manufacturing. And then it says, including books and records relating to supply contracts and service contracts, among others. Certainly, the contract itself seems to contemplate that third parties will assist in the manufacture. And so, Your Honors, again, when a right to make, use, and sell is granted, if there's going to be a restriction as to third parties assisting the licensee, that needs to be expressly written into the agreement as an exclusion. A general reservation of rights not granted doesn't pull back a right that was granted. So, for example, if the provision Justice Lurie just referred to, 6.1c, concluded not by saying or by a third party, but by saying, but of course third parties services cannot be used as subcontractors. Would that be explicit enough to sort of take it out of the half-made basket? We'd have to look at the whole agreement, Your Honor, but that would certainly be a step in that direction. So we do have to look at the contract as a whole, not with standing what you say is clear language on may it have made. You do, Your Honor, and again I would say that a general reservation of rights that doesn't call out you can't use third party distributors to sell, or it doesn't call out you can't use third party manufacturers to manufacture, that general reservation that just says rights not granted isn't specific enough. The language Your Honor proposes is specific language. Why isn't this enough of an ambiguity, at least, created by the reservation language to go outside the contract to look at the parties intact? Again, Your Honor, I hate to sound like a broken record, but it's because the right to make includes the right to allow to use somebody else's hands. You can have someone else make it for you. If you're the licensee, you can have someone else make the product for you. You have the right to make. They are operating under your license as the Kerry Agreement said. That's an accepted activity under the license to have someone else make it if it's for your benefit. I suppose under your theory you could also have someone else sell it for you. That's correct, Your Honor, if it's, again, for you. The foundry right comes when... The third party is acting in its own behalf or on behalf of the licensee. Is that the basic... If I understood the question correctly, if they're acting on their own behalf by putting their label on it, selling it as... Their product. It's their product, like in the Atmel case, then the licensee is becoming a foundry for others. But if they're selling the IBM product, or in this case, the Star Seismic Brace, they're acting under the license grant, which is a right to sell. Now, under Corbrace's theory, this General Reservation of Rights might impair the right to use third-party independent distributors to sell braces. And that doesn't make sense. We've got an explicit grant of a right to make, use, and sell. The General Reservation of Rights doesn't call out subparts of those rights. And, Your Honors, we haven't got even an argument to the termination. There is simply a failure to properly allege compliance with the contract's requirements of termination with notice and a right to cure. I don't think we have time to argue that, but it simply was not properly alleged in this case. Adequately briefed. Thank you, Mr. Burton. Thank you. Mr. Roberts, there's some rebuttal time.  Let me address this right to use distributors. If the distributor is selling for you, the distributor is not a party to that sales contract. If he is a party, then there has been a sale to the distributor, and that sale extinguishes the patent right. So that situation is really non-analogous to what we have here. If we start talking about the right to sell, there's two parties to that sales contract, and once that sale happens, that extinguishes the patent right. The right to make is different in kind. And what Star Seismic seems to be arguing is that the right to make is not implied, it's inherent. And it's not inherent. We know that inherency means that it's necessary, that that's the only way you can do it. And obviously, the licensee always has the right to make it by themselves, and that's what this contract... But it's well accepted in American commerce today that subcontracting is part of our way of industrial life. I mean, everybody is subcontracting, not everybody, but a huge percentage of manufacturers subcontract and have someone else make either the whole of their product or the part of it. I mean, it used to be, I remember years ago, American companies were selling television sets under their own name, but everybody knew that the insides of the set had been made in Japan. And certainly, if you contemplate using subcontractors, you should make sure that you get have-made rights and not sign a license agreement that says rights not expressly granted are reserved to the licensor. Let me address this continued reference to other provisions in the license because this court in Cyrix v. Intel at 77 F. 3rd, 1386 said that you shouldn't give effect to expressions of intention if doing so would override the clear operative language in the agreement. Here we have clear operative language. There's a clear roadmap laid out. Is it expressed? If not, it's withheld. It's that clear. And we don't need to look at these other provisions. Even if you do look at those other provisions, what you'll see or what you won't see is any reference to third-party manufacturers. There is no reference to third-party manufacturers. There's reference to using it. There's reference to supply contracts, but nothing about third-party manufacturing. And so, if we're going to somehow construe those to say, okay, there's an intent in making that factual... Don't third-parties manufacture under a supply contract? They could, but other parties could also be providing services under a supply contract. So, that language doesn't necessarily lead... It's not necessarily limited to manufacturing, but may include it. May I suggest that on a rule 12B6 motion, which this is, those kinds of factual inferences get resolved in our favor, not in Star Seismic's favor. The Westinghouse case, the Montrose case, both referred to have-made rights being implied rights. They're not part and parcel of the right to make. They are separable. It talks about implied rights. We see in the cases over and over that parties pull those out and make rights differently from have-made rights. And, of course, this court's decision in Intel ITC said, neither party intended to rely on any implied license from Intel. That provision prevents any implication of have-made rights. The have-made rights are clearly separable from make rights. I see I'm out of time. I thank the court. Thank you. Thank you, Mr. Roberts. Case will be taken under advisement.